[Cite as *State v. Simmons*, 2011-Ohio-5561.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO                               :

                                       :            Appellate Case No. 23991

        Plaintiff-Appellee        :

                                       :            Trial Court Case No. 09-TRC-2384

v.                                    :

                                       :

JAMES L. SIMMONS           :           (Criminal Appeal from Montgomery

                                     :          County Municipal Court - Western

        Defendant-Appellant     :       Division)

                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of October, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by GREGORY P. SPEARS, Atty. Reg. #0009002, Assistant Prosecuting Attorney, 30 Wyoming Street, Dayton, Ohio 45409
        Attorney for Plaintiff-Appellee

CARLO C. McGINNIS, 130 West Second Street, Suite 800, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant James L. Simmons appeals from his conviction and sentence for Operating a Motor Vehicle While Under the Influence of Alcohol, R.C. 4511.19(A)(1)(a).

{¶ 2} Simmons contends that the trial court erred in overruling his motion to

suppress because the trial court incorrectly found that there was reasonable articulable suspicion to justify the officer's request that he perform field sobriety tests (FST). Next, Simmons argues that certain statements made during the traffic stop should also be suppressed because he was not given the warnings required by *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Finally, Simmons argues that the trial court failed to state on the record its findings of fact material to its determination of his motion to suppress.

{¶ 3} We conclude that there was reasonable and articulable suspicion justifying the administration of field sobriety tests. We also conclude that Simmons was not in custody when he made the statements he sought to suppress, so that they were not subject to the requirements of *Miranda v. Arizona*. Finally, we conclude that Simmons did not request findings of fact, so that the trial court did not err in failing to provide them. Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 4} One early morning in June 2009, Deputy Walt Steele of the Montgomery County Sheriff's Department came upon Simmons, who was driving a 1975 Chevy truck. Deputy Steele observed the truck weaving within its own lane and decided to run the license plate number. Deputy Steele discovered that the license plates were registered to a 1991 Buick. Deputy Steele stopped the truck because of the fictitious plates. The stop occurred in the parking lot of a bar.

{¶ 5} Deputy Steele asked Simmons if he was aware that the plates on the 1975 Chevy were registered to another vehicle. Simmons explained that the truck belonged to his niece, and he did not know about the fictitious plates. Deputy Steele testified that during this

conversation, "I could smell a strong odor of alcohol coming from his breath. I noticed that his eyes were red and watery and I noticed that he was real slow answering my questions and kind of turning away from me, appearing confused." When questioned, Simmons denied having consumed alcohol. Deputy Steele then performed a Horizontal Gaze Nystagmus test, with a simple instruction to "follow with his eyes." Deputy Steele concluded that this test provided further support for his suspicion that Simmons was impaired. Steele requested Simmons to exit the vehicle and move to the back of the Steele's cruiser. Deputy Steele noted that Simmons was "slow and unsteady on his feet," when getting out of the truck.

{¶ 6} In Deputy Steel's police report, which he prepared immediately following the stop, Steele noted that Simmons was taking medication for diabetes, there was an odor of alcoholic beverage, his clothing was orderly, his attitude was sleepy, cooperative, and polite, his eyes were only bloodshot, and his speech was only fair. There were options on the police report form concerning the suspect's eyes and speech which were unchecked, such as "watery" and "confused." In the incident report Deputy Steele wrote later that morning, Steele noted that he smelled an odor of alcohol coming from Simmons, that Simmons's speech was slow, and that Simmons appeared confused.

{¶ 7} During the walk to Deputy Steele's cruiser, Steele again asked Simmons how many alcoholic drinks he had consumed. Again, Simmons denied having consumed any alcoholic beverages. After Simmons entered the rear of the police cruiser, Deputy Steele ran Simmons's license on his computer, which showed that Simmons was driving with a suspended license and had a previous Operating a Vehicle Under the Influence conviction. While in the police cruiser, Deputy Steele could smell the alcohol "even stronger" and, once

again, asked Simmons how many alcoholic beverages he had consumed. At this time, Simmons admitted to consuming one beer. Deputy Steele then asked Simmons to perform several FST's and Simmons agreed to do so. Simmons was not handcuffed, but Deputy Steele acknowledged that he would not have let Simmons leave.

{¶ 8} Deputy Steele performed another HGN test, a walk-and-turn test, and a one-leg stand test. Deputy Steele noted on his report that Simmons tallied six out of six indicators, five out of eight indicators, and two out of four indicators, respectively, on the tests. In Deputy Steele's opinion, based on his training and experience, Simmons was under the influence. Simmons was given *Miranda* warnings at 2:01 a.m., and was advised of the offenses with which he was being charged. The total time of the stop was approximately half an hour.

{¶ 9} Simmons was cited for Unauthorized Use of Plates, driving under an ALS suspension, and Operating a Motor Vehicle Under the Influence. After his motion to suppress was heard and denied, Simmons pled no contest to Operating a Motor Vehicle Under the Influence and all other charges were dismissed.

{¶ 10} From his conviction and sentence, Simmons appeals.

II

{¶ 11} Simmons's First and Second assignments of error are as follows:

{¶ 12} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.

{¶ 13} "THE TRIAL COURT SHOULD HAVE RULED THAT THERE WAS INSUFFICIENT REASONABLE ARTICULABLE SUSPICION TO JUSTIFY THE

OFFICER'S REQUEST THAT DEFENDANT PERFORM FIELD SOBRIETY TESTS."

{¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. *State v. Strope*, 2009-Ohio-3849 at ¶15. First, Simmons may challenge the trial court's findings of fact, in which event we must determine whether those findings are against the manifest weight of the evidence. Next, Simmons may claim that the trial court failed to apply the correct legal test to the facts, in which event we must determine whether the trial court committed an error of law. "Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case." Id.

{¶ 15} Simmons does not dispute that Deputy Steele had the right to stop him for fictitious plates. The issue then becomes whether Deputy Steele had the right to administer FST's.

{¶ 16} In *State v. Dixon* (December 1, 2000), Greene App. No. 2000-CA-30, and *State v. Spillers* (March 24, 2000), Darke App. No. 1504, this Court held that a "slight" odor, coupled with an admission of having consumed one or two alcoholic beverages and some other indicators was not enough to allow the administering of FST's. More specifically, we found in *Spillers* that traffic violations found by the trial court in that case to have been "de minimus,"[1] combined with an admission to having consumed one or two beers and a "slight"

---

[1] Although the police officer in that case testified that he observed the defendant cross a white line three times, and drive on a

odor of an alcoholic beverage, was not enough to justify the administration of field sobriety tests. In *Dixon*, the defendant was reported to have glassy, bloodshot eyes, admitted to having one or two beers, and having an odor of an alcoholic beverage emanating from him. There, we stated that: "The mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officers experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence nor is the subject's admission that he had had one or two beers."

{¶ 17} On the other hand, in *State v. Brewer*, Montgomery App. 23442, 2010-Ohio-3441, this Court found there was reasonable articulable suspicion when the defendant appeared nervous, his clothes were in disarray, he was "thick-tongued," and was "slow-to-speech." The defendant, moreover, couldn't find his driver's license and upon returning to the defendant's vehicle, the police officer smelled a strong odor of alcohol. The defendant also admitted to drinking earlier in the day. Id., at ¶ 23.

{¶ 18} In the case before us, Deputy Steele smelled "a strong odor of alcohol" emanating from Simmons during initial questioning. Deputy Steele also observed Simmons's eyes as red and watery and his speech was slow. Simmons appeared confused, and was looking away when answering questions. Simmons was slow and unsteady on his feet as he walked with Deputy Steele over to the police cruiser. Simmons also consented to take the FST's. The sum of these facts, we find, are more factually analogous to our decision in

---

yellow line, the defendant testified that he did not commit any irregularities while driving, and the trial court, in resolving this conflicting testimony, found "de minimus" violations, which it did not specify.

*Brewer* than *Spillers* and *Dixon*. We conclude, therefore, that Deputy Steele had reasonable articulable suspicion to administer FST's and the trial court did not err in denying the motion to suppress.

**{¶ 19}** Simmons's First and Second assignments of error are overruled.

III

**{¶ 20}** Simmons Third Assignment of Error is as follows:

**{¶ 21}** "THE TRIAL COURT SHOULD HAVE SUPPRESSED THE DEFENDANT'S STATEMENTS IN THAT HE WAS 'SUBJECTED TO TREATMENT' THAT RENDERED HIM IN CUSTODY AND ENTITLED TO MIRANDA WARNINGS."

**{¶ 22}** Simmons claims that the statements he made after he was taken out of his vehicle should be suppressed, because Deputy Steele failed to administer *Miranda* warnings. *Miranda* warnings are required "when an individual is taken into custody or otherwise deprived of his freedom in any significant way and is subjected to questioning." *Miranda v. Arizona* (1966), supra, 384 U.S. 478. Questioning, by itself, does not trigger the requirement of *Miranda* warnings – the subject of the investigation must also be in custody. *State v. Goodspeed*, Montgomery App. No. 19979, 2004-Ohio-1819. Traffic stops, as noted by both the United States Supreme Court and by the Supreme Court of Ohio, do not trigger the need for Miranda. See *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317; *State v. Farris* (2006), 109 Ohio St.3d 519. However, if the person stopped is then "subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." *Berkemer v. McCarty*, 468 U.S. 440. "The only relevant inquiry in determining whether a person is in custody is how a

reasonable man in the suspect's position would have understood his situation."  Id., at 442.

{¶ 23} In *State v. Farris*, as Simmons notes in his amended brief, the Supreme Court of Ohio found that a reasonable person in the defendant's position would have understood himself to be in the custody of a police officer when the officer had taken his car keys, patted him down, told the defendant he was going to search the vehicle for drug paraphernalia, and instructed the defendant to sit in the police cruiser.  Farris was deemed to have been placed in custody "for practical purposes" due to the officer's treatment after the original traffic stop. The defendant's statements in response to questioning were held to be inadmissible.

{¶ 24} On the other hand, we have held that an individual who was requested to exit a vehicle and sit in the back of a police vehicle without the option of leaving was not in custody and his statements were admissible.  *State v. Wilkins*, Montgomery App. No. 20152, 2004-Ohio-3917.  We noted that the defendant had not been handcuffed, that the defendant was merely invited by the police officer to sit in the police cruiser (it was raining heavily), and the police took no actions that would lead a reasonable person in the defendant's position to believe that he was going to be detained indefinitely.

{¶ 25} In the case before us, Deputy Steele repeatedly asked Simmons how many alcoholic beverages he had consumed after noticing a "strong smell of alcohol." Furthermore, Deputy Steele requested Simmons to exit his vehicle and sit in the police cruiser, took his driver's license in order investigate his driving record, and requested Simmons to perform FST's.  All of these actions Simmons consented to.  Simmons was not handcuffed at this time, but was not free to leave, according to Deputy Steele.  Deputy Steele did not, at any time, inform Simmons that he was under arrest or give Simmons any indication he would be

detained indefinitely. Simmons claims that Miranda warnings should have been given when he was not free to leave, he had been placed in the back of the cruiser, and when he was repeatedly questioned by Deputy Steele. We hold otherwise, based upon our holding in *Wilkins* and the holding of the Supreme Court of Ohio in *Farris*. Simmons was not given a reasonable basis to believe that he was under arrest; therefore, he was not in custody for purposes of *Miranda v. Arizona*, supra.

{¶ 26} Simmons's Third Assignment of Error is overruled.

IV

{¶ 27} Simmon's Fourth Assignment of Error is as follows:

{¶ 28} "THE TRIAL COURT FAILED TO STATE ON THE RECORD ITS ESSENTIAL FINDINGS ON FACTUAL ISSUES INVOLVED IN DETERMINING DEFENDANT'S MOTION TO SUPPRESS."

{¶ 29} Criminal Rule 12(F) requires that: "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record." At the conclusion of the suppression hearing, the trial court took the matter under advisement and requested briefs. In its entry, the trial court merely stated: "After reviewing the facts presented in the case and after consideration of the Post Motion and Memorandums filed by Defense and Prosecution, the Motion to Suppress is hereby **DENIED**."

{¶ 30} Because the cause remained pending before the trial court after the motion to suppress was denied, Simmons could have moved for findings of fact, or otherwise objected to the trial court's failure to make findings of fact with respect to his motion to suppress. He did not.

**{¶ 31}** "This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, 117, vacated in part on other grounds, 438 U.S. 911, 98 S. Ct. 3137, 57 L. Ed. 2d 1156 (1978).

**{¶ 32}** Simmons could have, but did not, bring to the attention of the trial court its error in having failed to make findings of fact in connection with his motion to suppress, at a time when the trial court could have corrected its error by making findings of fact. Therefore, we agree with the State that Simmons has forfeited all but plain error. See Crim.R. 52(B).

**{¶ 33}** We further agree with the State that on this record the trial court's error in having failed to make findings of fact in connection with Simmons's motion to suppress has not been shown to have been plain error.

**{¶ 34}** Simmons's Fourth Assignment of Error is overruled.

V

**{¶ 35}** All of Simmons's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.


Copies mailed to:

Mathias H. Heck
Gregory P. Spears
Carlo C. McGinnis
Hon. Adele M. Riley