[Cite as *State v. Brown*, 2012-Ohio-3099.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :          C.A. CASE NO.    2011 CA 52

v.                               :          T.C. NO.    TRC1007090

JAMES D. BROWN                   :          (Criminal appeal from
                                              Municipal Court)

    Defendant-Appellant        :

                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____6th_____ day of _____July_____, 2012.

. . . . . . . . . .

BETSY A. DEEDS, Atty. Reg. No. 0076747, Assistant Prosecuting Attorney, 510 West Main Street, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 2661 Commons Blvd., Suite 214, Beavercreek, Ohio 45431
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}    Defendant James D. Brown appeals from his conviction and sentence for

Operating a Motor Vehicle While Under the Influence of Alcohol, R.C. 4511.19(A)(1)(a), his third conviction within six years.

{¶ 2} Brown asserts the trial court erred in denying his motion to suppress for four reasons. First, Brown contends that the officer prolonged the traffic stop beyond the time period needed for investigating the initial ordinance violation that prompted the stop. Second, Brown argues that the trial court erred in not suppressing evidence that was illegally seized. Third, Brown contends that the court erred in denying the motion to suppress because Officer Duncan lacked probable cause for arresting Brown. Lastly, Brown argues the court erred in not suppressing statements he made while in custody without first being informed of his *Miranda* rights.

{¶ 3} For the following reasons, the trial court's judgment will be affirmed.

I

{¶ 4} On August 8, 2011, at approximately 3:00 a.m., Officer Duncan was parked in his cruiser when he heard an engine revving in the distance. He located the vehicle responsible for the sound a couple hundred yards away and saw that the vehicle was circling the parking lot of a restaurant open for late night patrons, while revving its engine.

{¶ 5} After continuing to hear this noise, Duncan followed the vehicle; he believed it to be in violation of a local ordinance prohibiting loud exhaust and rapid acceleration. Duncan drove behind the vehicle to see if there was a malfunction or if the noise was created deliberately by the driver. Once the car pulled away from an intersection, it did so very rapidly and made its way onto Interstate 675. Duncan activated the cruiser's overhead lights and siren to pull over the vehicle. The vehicle rapidly accelerated away from the

intersection, forcing Duncan to accelerate well past the posted speed limits for the on ramp and interstate in order to keep the vehicle in sight and catch up to the vehicle.

{¶ 6} Once the vehicle was stopped on I-675, Duncan found two people in the car. He asked the driver, James Brown, for his license. After Duncan informed the driver why he was stopped, Brown made a confusing statement about the model of the vehicle. Duncan then noticed that the smell of an alcoholic beverage emanated from the vehicle, that Brown had glassy bloodshot eyes, that his speech was slurred, and that all of his mannerisms seemed slowed down and delayed. Upon making these observations, Duncan asked if Brown had consumed alcohol earlier in the evening, to which Brown replied in the negative.

{¶ 7} Duncan then returned to his cruiser and requested backup. While waiting for backup, Duncan ran a check on Brown for valid license, outstanding warrants, and any prior OVI convictions. Roughly ten minutes later, the backup arrived and Duncan asked Brown to exit the vehicle, at which point Duncan conducted a pat down search of Brown and asked him to perform some field sobriety tests.

{¶ 8} Duncan first performed the horizontal gaze nystagmus (HGN) test, followed by the one leg stand test, and concluded with the walk and turn test. Duncan testified that Brown refused to perform the HGN test because he stared straight ahead and did not follow the stimulus with his eyes, preventing the assessment of nystagmus. Duncan observed that Brown displayed signs of impairment during the one leg stand test; he swayed during the test, used his arms to balance himself, and put his foot down in the course of the test. Lastly, Brown displayed signs of impairment with the walk and turn test as well; he was unable to maintain balance during the instructions and throughout the test, stepped off the

line, turned incorrectly, and walked back an incorrect number of steps.

{¶ 9} At the conclusion of the field sobriety tests, Duncan believed Brown to be unfit to get back behind the wheel of the vehicle. The officer placed Brown under arrest and asked if he had any prior convictions for driving under the influence. Brown did not answer the question, but responded, "Whatever man, just put me in there, let's go" and began walking towards the rear of police cruiser. Duncan then gave Brown his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Lastly the officer placed Brown in the back of the cruiser and took him to the police station. At the station, Duncan searched Brown's mouth and then asked Brown to submit to a BAC test, but Brown refused to do so.

{¶ 10} Brown moved to suppress the field sobriety tests, any statements he made, and the observations and opinions of Duncan in regard to Brown's sobriety. The trial court granted his motion to suppress the results of the one leg stand test and the walk and turn test; however, it denied the motion to suppress Duncan's observations of those tests. Following the motion to suppress hearing, Brown pled no contest to the charge and was convicted of Operating a Vehicle while under the Influence in violation of R.C.4511.19 (A)(1)(a); a loud muffler charge was dismissed. Brown was sentenced to serve 365 days in jail with 265 days suspended and to receive treatment while incarcerated. Brown appeals his conviction and sentence.

II

{¶ 11} Brown's first assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S

MOTION TO SUPPRESS WHEN THE OFFICER PROLONGED THE TRAFFIC STOP BEYOND THE TIME NECESSARY TO INVESTIGATE ANY SUSPICION OF A TRAFFIC OFFENSE.

**{¶ 12}** In reviewing the ruling on a motion to suppress, an appellate court must accept the trial court's supported findings of fact as true. *State v. Dudley*, 2d Dist. Montgomery No. 24904, 2012-Ohio-960, ¶ 6. The court must then determine whether the facts satisfy the applicable legal standard; this is done without deference to the conclusion of the trial court. *Id.*

**{¶ 13}** Stopping an automobile is reasonable if an officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An officer cannot continue to detain a suspect past the time necessary for investigating and completing the initial traffic stop merely to conduct a "fishing expedition" for other criminal activity. *State v. Jones*, 2d Dist. Montgomery No. 23920, 2010-Ohio-5522, ¶ 16. If an officer makes a stop for a traffic offense, the officer must have a reasonable, articulable suspicion that a person is driving under the influence to justify further detention for the administration of field sobriety tests. *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 11 (2d Dist.). Many observations can satisfy this reasonable, articulable suspicion, including the odor of an alcoholic beverage emanating from the vehicle, glassy bloodshot eyes, *id.* at ¶ 15, and slow or slurred speech. *State v. Simmons*, 2d Dist. Montgomery No. 23991, 2011-Ohio-5561, ¶ 22.

**{¶ 14}** Officer Duncan testified that he stopped Brown because Brown had violated a local ordinance prohibiting excessive noise. Specifically, Brown caused excessive noise

by continuously revving his engine while in a parking lot. Brown does not claim that Duncan's stop of the vehicle was unlawful and the record does not show the stop was unlawful.

{¶ 15} Duncan further testified to his observations that he suspected Brown was driving under the influence of alcohol. Duncan stated that a strong odor of an alcoholic beverage was coming from the vehicle when he approached to ask for identification. Duncan also observed that Brown had glassy, bloodshot eyes and that his speech was slurred. These observations warranted field sobriety tests.

{¶ 16} Additionally, it is well established law that once an officer has made a legal traffic stop, the officer may take steps reasonably necessary to protect his or her personal safety. *United States v. Hensley*, 469 U.S. 221, 683-684, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Brown argues that Duncan unreasonably prolonged the traffic and OVI investigation by waiting ten minutes for a backup police officer to arrive at the scene before conducting field sobriety tests. Duncan was a lone officer wanting to perform field sobriety tests on an individual, late at night, while a passenger remained in the vehicle. He wanted an assisting officer present so that his attention could be focused on administering the field sobriety tests. Under these circumstances, requesting a back up officer's presence during field sobriety tests was a reasonably necessary precaution for the stopping officer's personal safety. While ten additional minutes wait for the arrival of Duncan's partner may have been an inconvenience, it was not an unreasonable prolonging of the traffic stop, but merely a precaution for the officer's personal safety.

{¶ 17} In his brief, Brown argues that the officer was not concerned for his personal

safety, because he had informed dispatch that they could discontinue checking-in with him to make sure he was okay. However, Duncan testified that he felt safe because he was seated in his cruiser with a comfortable distance between himself and Brown's vehicle while Brown and the passenger remained in Brown's car. Duncan further testified as to why he did not initiate the field sobriety tests prior to the arrival of his partner:

[Defense counsel]: Again * * * at this point why aren't you doing the field sobriety tests on Mr. Brown?"

[Officer Duncan]: Because there's two of them; there's one of me. We're on [Interstate] 675, it's night, it's hard to see over my overheads cars coming at us from the rear because I can't see clearly. I would like to have another set of eyes.

{¶ 18} The records thus reflects that Officer Duncan was only prolonging Brown's detention as a safety precaution, not for the purpose of "fishing" for information or to find cause to search for other criminal activity of which he did not already suspect.

{¶ 19} The first assignment of error is overruled.

III

{¶ 20} Brown's second assignment of error is as follows:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO PROPERLY SUPPRESS EVIDENCE RESULTING FROM AN ILLEGAL SEIZURE.

{¶ 21} Brown next argues that any evidence that flowed from Duncan's pat down at the scene and his search of Brown's mouth at the police station should have been

suppressed. The record does not reflect that any evidence was seized from either the pat down or the mouth search.

**{¶ 22}** In order for derivative evidence to be suppressed, the evidence must have been obtained by exploitation of the illegal search or seizure, and therefore be tainted by it. *Wong Sun v. U.S.*, 371 U.S. 471, 487-488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This was not the case regarding Brown's pat down and mouth search. Duncan's observations of Brown's impairment were not derived from or bolstered by these two searches. As there was no evidence or contraband found on Brown's person during the pat down or the mouth examination and no evidence towards his arrest for driving under the influence was derived therefrom, there is no evidence to be deemed illegally seized.

**{¶ 23}** The second assignment of error is overruled.

IV

**{¶ 24}** Brown's third assignment of error is as follows:

THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS AS THE OFFICER LACKED PROBABLE CAUSE TO ARREST MR. BROWN.

**{¶ 25}** Brown next argues that Officer Duncan lacked the probable cause requisite to arrest him following the traffic stop. To arrest a suspect requires significantly more than what is needed for administering field sobriety tests. *State v. Scott*, 2d Dist. Montgomery No. 22446, 2008-Ohio-2725, ¶ 256. Probable cause, specifically in terms of arrests for driving under the influence, is determined by whether, at the time of arrest, the officer had sufficient information, from a reasonably trustworthy source, of facts and circumstances, that

are sufficient to make a prudent person believe the suspect was driving under the influence. *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), superceded by statute on other grounds. This standard requires examining the totality of facts and circumstances surrounding the arrest. *State v. North*, 2d Dist. Champaign No. 93CA10, 1993 WL 441805, *3 (Nov. 1, 1993).

**{¶ 26}** Brown argues that because the results of the field sobriety test were suppressed, the only evidence the State could produce to show impairment was Duncan's testimony that Brown had a strong odor of an alcoholic beverage, glassy, bloodshot eyes, and slurred speech. However, only the results of the field sobriety tests were excluded by the trial court, the observations Duncan made while administering the field sobriety tests were still admissible. Officers can testify as to "observations made during a defendant's performance of nonscientific standardized field sobriety tests." *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 15. Nonscientific field sobriety tests include the walk and turn test and the one leg stand test. *State v. Boczar*, 113 Ohio St. 3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 25. Duncan testified that, while administering the one leg stand test, Brown swayed, used his arms to balance himself, and put his foot down throughout the course of test. Duncan also testified that during the administration of the walk and turn test, Brown was unable to maintain balance during the instructions, and throughout the test, he stepped off the line, turned incorrectly, and walked back an incorrect number of steps.

**{¶ 27}** Based on the officer's observations during the field sobriety tests, in addition to the observations that Brown had glassy bloodshot eyes, slurred speech, and a strong odor

of an alcoholic beverage, a prudent person would have had sufficient information to believe that Brown was driving under the influence of alcohol.

{¶ 28}   The third assignment of error is overruled.

V

{¶ 29}   Brown's fourth assignment of error is as follows:

THE TRIAL COURT ERRED IN FAILING TO SUPPRESS DEFENDANT'S STATEMENTS IN THAT HE WAS IN CUSTODY AND ENTITLED TO *MIRANDA* WARNINGS.

{¶ 30}   Brown argues that the trial court should have suppressed his admission to prior OVI convictions because that statement was made at a time when Brown was entitled to *Miranda* warnings.   Suspects are entitled to *Miranda* when they are in custody or otherwise deprived of freedom, and they are subjected to questioning.   *State v. Simmons*, 2d Dist. Montgomery No. 23991, 2011-Ohio-5561, ¶ 25.   The inevitable discovery doctrine states that evidence will not be suppressed if there is a reasonable probability that the illegally obtained evidence would have been discovered during a lawful investigation.   *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960, ¶ 59 (2d Dist.), *citing Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 (1985).   The burden of showing that had it not been for the unlawful conduct, the police would have discovered the evidence, falls upon the State.   *Id*.

{¶ 31}   The record reflects that the information was previously discovered through a lawful investigation separate from Duncan's inquiry to Brown.   Duncan testified, and the cruiser video of the stop shows, that he made a request for any prior "19's", meaning he

sought to learn if Brown had any past history with driving under the influence; the dispatcher responded (prior to Brown's being questioned) with a confirmation of prior convictions. The information regarding Brown's past convictions for OVI was discovered prior to Brown's ever being taken into custody, let alone being questioned while in custody. Even if Brown did not respond to the inquiry and remained silent or even if Brown's response should have been suppressed, the evidence of his record would have been before the court.

**{¶ 32}** Furthermore, the cruiser video of the stop shows that Brown did not give an answer regarding past convictions. Brown only acknowledged the current arrest, stating, "Whatever man, just put me in there, let's go" and began walking toward the back of the cruiser. Brown's statement made no indication that he did or did not have prior convictions for OVI.

**{¶ 33}** The fourth assignment of error is overruled.

## VI

**{¶ 34}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and HARSHA, J., concur.

(Hon. William H. Harsha, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Betsy A. Deeds
Thomas M. Kollin
Hon. Beth W. Root