[Cite as *State v. McGrath*, 2021-Ohio-2605.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-21 |
| | : | |
| v. | : | Trial Court Case Nos. 2019-CRB-001-0409 and 2019-TRC-001-1357 |
| | : | |
| MATTHEW WILLIAM MCGRATH | : | |
| | : | (Criminal Appeal from Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of July, 2021.

. . . . . . . . . . .

JESSE J. GREEN, Atty. Reg. No. 0040265, Assistant Prosecuting Attorney, Darke County Municipal Court, 504 South Broadway, Greenville, Ohio 45331
    Attorney for Plaintiff-Appellee

REGINA R. RICHARDS, Atty. Reg. No. 0079457, 202 Scioto Street, Urbana, Ohio 43078
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Appellant, Matthew William McGrath, was convicted of being in physical control of a vehicle while under the influence of alcohol or drugs. McGrath asserts that he was subjected to an unconstitutional stop and that the field sobriety testing which followed was not supported by a reasonable, articulable suspicion that he was under the influence of alcohol. McGrath additionally asserts that, when taking his no contest plea, the trial court did not comply with the Traf.R. 10(B)(2) requirement that he be advised of the effect of a no contest plea. We conclude that the stop was a constitutional investigative stop and that the field sobriety testing was supported by a reasonable articulable suspicion of alcohol impairment. But we also conclude that the trial court completely failed to comply with the Traf.R. 10(B)(2) requirement that a defendant entering a no contest plea must be advised of the effect of such a plea. The trial court's judgment will be reversed and remanded.

## Facts and Procedural History

**{¶ 2}** On June 26, 2019, at approximately 8:45 p.m., Darke County Sheriff's Deputy Greg Armstrong observed a parked automobile in the 1200 block of Imler Drive, Wayne Lakes, Ohio, while on routine patrol. Armstrong initiated a stop of the automobile by activating the cruiser's overhead lights. McGrath was seated in the parked automobile's driver's seat; he exited the vehicle and approached Armstrong. The ensuing encounter resulted in McGrath's arrest for operating a vehicle while under the influence (OVI) under R.C. 4511.191, a first-degree misdemeanor. However, Armstrong testified at a subsequent suppression hearing that the OVI citation was a mistake, because it had been his intent to issue McGrath a citation for having physical control of a vehicle while under the influence (having physical control), in violation of R.C. 4511.194, also a first-degree

misdemeanor.

{¶ 3} Trial counsel filed a motion to suppress, challenging the constitutionality of the stop, the field sobriety testing, and whether there was probable cause to arrest McGrath. Following a hearing, the trial court overruled the suppression motion, except that the court suppressed the horizontal gaze nystagmus (HGN) test. Thereafter, McGrath pleaded no contest to having physical control, and he was sentenced accordingly. This appeal followed.

## Assignments of Error

{¶ 4} McGrath presents two assignments of error:

The trial court erred by overruling Appellant's motion to suppress where law enforcement lacked reasonable [articulable] suspicion of criminal activity to justify an investigatory stop and seizure and/or further intrusion to perform [field sobriety tests].

McGrath claims that the trial court erred in accepting his no contest plea, because the court failed to inform him of the effect of his no contest plea, as required by Traf.R. 10(D) and as applicable under Traf.R. 10(B)(2) and therefore it was not entered knowingly, intelligently or voluntarily.

## Traffic Stop

{¶ 5} At the suppression hearing, during his direct examination, Armstrong testified that he made the traffic stop because he observed McGrath's vehicle "partially on the roadway." Armstrong also testified that on previous occasions at the same location, he had "caught people [who were] unresponsive and overdosing on heroin." During cross-examination, Armstrong expanded upon the facts surrounding the stop as follows:

Q. Specifically, the place where you located my client's vehicle, is there loose gravel in the area?

A. There's loose gravel but it's flat and smooth.

Q. Is it slanted or sloped.

A. The only place it's sloped, Your Honor, is down where there used to be - - or possibly still is like a boat launch but that is below where they were sitting. Where they was sitting it was straight and - - it was a straight area.

Q. And how many lanes?

A. There's two lanes, Your Honor, right there.

Q. Are they clearly marked?

A. There's no markings for the lanes. The only thing that identifies the markings would be the - - there's grass and weeds on both sides.

Q. Would you agree that it's essentially a back country road?

A. I would agree with that, Your Honor.

Q. And you testified that [the] CRV was about a foot onto the road?

A. Yes, Your Honor. It was approximately one foot into the roadway.

Q. Was it blocking the roadway?

A. It was not blocking the roadway, Your Honor.

Q. So it wasn't prohibiting the flow of traffic in any way.

A. Other than if two people were to meet at that particular area, you would have to - - one of them would have to stop.

Suppression Hearing Tr. p. 24-25.   Additionally, a photograph was introduced (Exhibit B) which depicted McGrath's vehicle parked on the roadway, albeit slightly.

{¶ 6} Appellate "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 12. Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard." *Burnside* at ¶ 8, citing *Fanning* and *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (3d Dist.1997).

{¶ 7} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Taylor*, 138 Ohio App.3d 139, 145, 740 N.E.2d 704 (2d Dist.2000) (noting "the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article 1" of the Ohio Constitution "protect the same interests in a consistent manner"). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions "is commonly known as an investigative or *Terry* stop," which includes the temporary detention of motorists for the enforcement of traffic laws. *State v. Dorsey,* 10th Dist. Franklin No. 04AP-737, 2005-

Ohio-2334, ¶ 17, citing *Terry*.

{¶ 8} The temporary "detention of [persons] during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. (Citations omitted.) *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An "automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. Generally, a police officer's decision to stop an automobile will comport with this requirement if the officer has a "reasonable suspicion" of criminal activity. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-1105 (9th Cir.2000); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.

{¶ 9} Moreover, the constitutionality of a stop supported by a reasonable suspicion that a traffic violation has been committed is not undermined by an officer's ulterior investigative motive for making the stop. *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.

{¶ 10} Turning to the pending case, R.C. 4511.66(A) states in pertinent part as follows:

> Upon any highway outside a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway * * *.

Armstrong's testimony, which the trial court implicitly found credible, and Exhibit B, a photo

of McGrath's vehicle on the roadway (which was referenced in the trial court's decision), lead to the conclusion that the traffic stop was supported by at least a reasonable suspicion that McGrath's vehicle was parked in violation of R.C. 4511.66(A).

## Field Sobriety Testing

{¶ 11} At the suppression hearing, Armstrong testified that, when he activated the cruiser's overhead lights, McGrath exited his vehicle and began walking toward the cruiser "pretty rapidly." Armstrong observed that, as McGrath exited his vehicle, "he had some trouble" performing this task, and as McGrath approached the cruiser, he seemed to be having "some trouble" walking. Armstrong ordered McGrath to return to his car, and McGrath complied with this request. Armstrong observed that, as McGrath returned to his car, he continued to have "trouble" walking and had difficulty getting back into his car. Armstrong testified that, overall, McGrath was "just very stumbly [and] staggering."

{¶ 12} Armstrong ultimately approached McGrath's vehicle and made contact with him. Upon doing so, Armstrong noted an "odor of alcohol emanating from [McGrath]." Armstrong further observed that McGrath's eyes were "glassy" and "bloodshot," and, upon talking to McGrath, Armstrong noted that McGrath's speech was "slurred." Armstrong observed an open container of beer near McGrath's person, and, when asked, McGrath admitted to consuming two beers. Based upon these observations and this information, Armstrong requested that McGrath perform a series of field sobriety tests, and McGrath complied. Upon completion of the tests, McGrath was arrested.

{¶ 13} To justify the further detention associated with field sobriety testing, "the officer must have a reasonable, articulable suspicion that [the detained] person is * * *

under the influence[.]"   *State v. Turney*, 2020-Ohio-4148, 157 N.E.3d 809, ¶ 14 (2d Dist.), quoting *State v. Brown*, 2d Dist. Greene No. 2011-CA-52, 2012-Ohio-3099, ¶ 13.   The determination of the existence of reasonable suspicion is based upon the "totality of * * * circumstances" as viewed " 'through the eyes of the reasonable and prudent police officer on the scene * * *' "   *Id.*, quoting *State v. Gladman*, 2d Dist. Clark No. 2013-CA-99, 2014-Ohio-2554, ¶ 14, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14.   In the context of alcohol impairment, "many observations can satisfy [the] reasonable, articulable suspicion [requirement], including the odor of an alcoholic beverage * * *, glassy bloodshot eyes, and slurred speech."   *Id.* at ¶ 15, quoting *Brown* at ¶ 13.

{¶ 14} Armstrong's observations, which included McGrath's trouble ambulating, his difficulty exiting and entering his vehicle, his glassy bloodshot eyes and slurred speech, and the odor of alcohol, coupled with the open container and McGrath's admission of consuming two beers, taken together, were sufficient to provide the necessary reasonable, articulable suspicion of impairment to allow field sobriety testing.

{¶ 15} Having found that the stop was legal and that there was a basis for field sobriety testing, McGrath's first assignment of error is overruled.

**No contest Plea**

{¶ 16} A trial court's duties at a plea hearing are "graduated according to the seriousness of the crime with which the defendant is charged."   *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 25.

{¶ 17} Having physical control while under the influence, as a first degree misdemeanor, is a petty offense, "which means 'an offense for which the penalty

prescribed by law includes confinement of six months or less.' " *State v. McGlinch*, 2019-Ohio-1380, 135 N.E.3d 406, ¶ 21 (2d Dist.), quoting Traf.R. 2(D).[1]  A plea in a traffic case involving a petty offense is governed by Traf.R. 10(D), which states the following:

> In misdemeanor cases involving petty offenses * * * the court may refuse to accept a plea of guilty or no contest and shall not accept such pleas without first informing the defendant of the effect of the pleas of guilty, no contest, and not guilty.  This information may be presented by general orientation or pronouncement.

> Traf.R. 10(B) defines the effect of a guilty or no contest plea and states, in relevant part, that a plea of no contest "is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the complaint and such pleas shall not be used against the defendant in any subsequent civil or criminal proceeding."  Traf.R. 10(B)(2); *see also* Crim.R. 11(B)(2), which is identical to Traf.R. 10(B)(2).  A trial court accepting a plea to a petty traffic offense need only comply with Traf.R. 10(D), but such compliance must, when applicable, include the Traf.R. 10(B)(2) explanation of the effect of a no contest plea. *McGlinch* at ¶ 24.

{¶ 18} In *McGlinch,* we concluded that, when a defendant pleads no contest to a petty traffic offense and the trial court completely fails to inform the defendant of the effect of a no contest plea, in violation of Traf.R. 10(D), and the plea is contested on appeal, the defendant need not demonstrate prejudice, and the plea must be vacated.  *Id.* at ¶ 30-

---

[1] The Ohio Traffic Rules apply in all Ohio courts in traffic cases. Traf.R. 1(A). A "traffic case" is "any proceeding, other than a proceeding resulting from a felony indictment, that involves one or more violations of a law, ordinance, or regulation governing the operation and use of vehicles, conduct of pedestrians in relation to vehicles, or weight, dimension, loads or equipment, or vehicles drawn or moved on highways and bridges."  Traf.R. 2(A).

31. *See also State v. Sauceman*, 11th Dist. Trumbull No. 2020-T-0033, 2021-Ohio-172, ¶ 17; *State v. Williams*, 6th Dist. Lucas No. L-17-1064, 2018-Ohio-1000, ¶ 5. We note that this conclusion is consistent with the case law in felony cases that a trial court's complete failure to advise a defendant of a Crim.R. 11(C)(2)(a) non-constitutional right obviates the defendant's obligation to establish prejudice. *See State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 15.

{¶ 19} In McGrath's case, the trial court completely failed to inform him of the effect of a no contest plea. Moreover, the record does not reflect that McGrath was informed of the effect of a no contest plea through "general orientation" as allowed by Traf.R. 10(D). As such, we conclude, consistent with *McGlinch*, that McGrath's no contest plea must be reversed, and the case remanded to the trial court.

**Conclusion**

{¶ 20} McGrath's first assignment of error is overruled. His second assignment of error is sustained. The judgment of the Darke County Municipal Court is reversed, and the matter is remanded to the trial court.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.


Copies sent to:

Jesse J. Green
Regina R. Richards
Matthew William McGrath
Hon. James S. Detling, Visiting Judge
Hon. Julie L. Monnin