[Cite as *State v. Sheppeard*, 2013-Ohio-812.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee                :         C.A. CASE NO.    2012 CA 27

v.                                        :         T.C. NO.    11TRC5391
                                                    11TRC6650

STEVEN M. SHEPPEARD                        :

    Defendant-Appellant               :         (Criminal appeal from
                                           Municipal Court)

                                                   :

                                                     :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____8th_____ day of _____March_____, 2013.

. . . . . . . . . .

MICHAEL F. SHEILS, Atty. Reg. No. 0021678, City Prosecutor, 50 E. Columbia Street, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

WILFRED L. POTTER, Atty. Reg. No. 0029121, 234 N. Limestone Street, Springfield, Ohio 45503
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

[Cite as *State v. Sheppeard*, 2013-Ohio-812.]

{¶ 1} After a jury trial in the Clark County Municipal Court, Steven M. Sheppeard was found guilty of operating a vehicle under the influence of drugs or alcohol ("OVI") and failure to stop after an accident, both first-degree misdemeanors. The trial court also found Sheppeard guilty of failure to control, a minor misdemeanor, which was tried to the court. Sheppeard was acquitted of operating a vehicle with a concentration of 0.17 percent or more by weight per unit volume of alcohol in his whole blood. The trial court sentenced Sheppeard to 15 days in jail, a 345-day driver's license suspension, and a $500 fine for the OVI, and to five days in jail, a six-month driver's license suspension, and a $500 fine for failure to stop. These sentences were to run concurrently. The court also imposed a $100 fine for failure to control and court costs for all three offenses. Sheppeard indicates that his sentences were stayed by the trial court pending appeal.

{¶ 2} Sheppeard appeals from his conviction, claiming that his conviction was based on insufficient evidence and was against the manifest weight of the evidence, that the trial court erred in denying his motion to suppress, that the court erred in "changing its ALS [administrative license suspension] appeal ruling," and that his sentences were excessive and constituted a punishment for exercising his right to a jury trial. The State did not file a responsive brief.

{¶ 3} For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 4} According to the State's evidence at trial, Sheppeard hit a parked Toyota Camry with his Chevy Cruze on Share Street in Springfield, Ohio, as he was driving to his home, which was a few houses away, at approximately 5:00 p.m. on May 31, 2011. The Camry had paint transfer along the driver's side and the driver's side mirror was broken off

in the collision.

{¶ 5} The accident was witnessed by Michael Williams, who was waiting to meet one of Sheppeard's neighbors about buying a car. Williams testified that the Cruze did not stop, and he did not see anyone attempt to place a note on the Camry after the accident. Williams initially tried unsuccessfully to find out who owned the Camry. When the neighbor he was waiting for came home, Williams told that neighbor what he had seen; the neighbor then told the owner of the Camry (a different neighbor of Sheppeard). The owner of the Camry contacted the police.

{¶ 6} Officer Chrisman was dispatched to the scene at 5:24 p.m. and spoke with the owner of the Camry. He was directed to Sheppeard's residence farther along Share Street. Parked in Sheppeard's driveway was a blue Chevy Cruze with damage to the passenger side that was consistent with the damage to the Camry.

{¶ 7} Officer Chrisman knocked on Sheppeard's door for approximately 45 seconds before Sheppeard came to the door. Chrisman described Sheppeard as stumbling, lethargic, and with glassy eyes. When the officer asked Sheppeard about his vehicle, Sheppeard stated that he had not been in an accident and that it was parked in the garage. Officer Chrisman asked Sheppeard if he would step outside to look at his vehicle. Sheppeard's wife arrived home, and the officer explained to her that he believed Sheppeard's vehicle had been involved in a crash and that Sheppeard drove the vehicle.

{¶ 8} During the conversation among the three, Sheppeard indicated that he had taken an Ambien sleeping pill and drunk a 24-ounce can of beer. Sheppeard later stated that he had taken two or three Ambien. The officer did not ask when Sheppeard had consumed

the beer or taken the medication. Officer Chrisman asked Sheppeard if he had worn a seatbelt when he was driving; Sheppeard responded, "Yes." When asked if he had made any contact with his neighbor about the accident, Sheppeard gave no indication that he had attempted to do so. Instead, he emphasized that he could not have any points on his license because of his job. Sheppeard had not reported the accident to the police. Sheppeard appeared unsteady, tired, and slow to respond to questions throughout the conversation.

{¶ 9} Officer Christman placed Sheppeard under arrest for OVI. Sheppeard was charged by complaint with OVI, in violation of R.C. 4511.196(A)(1)(a), as well as failure to control and failure to stop after an accident in violation of Springfield City Ordinances 331.34(a) and 335.12(a), respectively. Case No. 11TRC05391. After Sheppeard was placed in the officer's cruiser, Officer Chrisman read BMV Form 2255 to Sheppeard and filled out most of the form. He then drove Sheppeard to the hospital, where blood was drawn. The blood was sent to the Miami Valley Regional Crime Lab for routine OVI analysis. The request form did not ask the lab to test for Ambien, and that medication was not part of the routine OVI screening for alcohol and drugs of abuse.

{¶ 10} On June 20, 2011, Officer Chrisman received the results of Sheppeard's blood test from MVRCL. The test results indicated that the percentage of alcohol in Sheppeard's whole blood was 0.236 percent. Two days later, Sheppeard was charged by complaint with an additional count of OVI, in violation of R.C. 4511.19(A)(1)(f), based on a prohibited blood alcohol concentration. Case No. 11TRC6650. On the same day (June 22), Officer Chrisman added the blood test result to BMV Form 2255, which resulted in an administrative license suspension of Sheppeard's driver's license.

{¶ 11} Sheppeard requested an appeal of the ALS. A hearing on that motion was held on June 30, 2011. The State offered BMV Form 2255 into evidence, but had no witnesses or other evidence. Sheppeard testified on his own behalf. In its written entry, the trial court found that Sheppeard "established at the ALS hearing that the arresting officer did not inform the defendant of the consequences of refusing to be tested or of submitting to the test." The court noted that BMV Form 2255 was not completed until June 22, 2011, and there was no evidence that BMV Form 2255 was read to Sheppeard prior to the May 31 blood draw. The trial court terminated Sheppeard's ALS and ordered Sheppeard's license to be returned.

{¶ 12} On the same day that his ALS appeal was sustained, Sheppeard filed a motion to suppress any tests of his coordination and/or sobriety (including chemical tests of his alcohol or drug level), any statements made by him, and the observations and opinions of the police officers. After a hearing on the motion, the trial court suppressed the statements made by Sheppeard after his arrest due to the officer's failure to read Sheppeard his *Miranda* rights, and overruled the remainder of his motion.

{¶ 13} The two charges under R.C. 4511.19(A) and the failure to stop after an accident charge were subsequently tried to a jury. The failure to control charge was tried to the court. As stated above, Sheppeard was acquitted of the driving under the influence charge based on a prohibited blood alcohol level. He was convicted of the remaining charges, and sentenced accordingly.

{¶ 14} Sheppeard appeals from his convictions, raising five assignments of error.

II.

{¶ 15} Sheppeard's first assignment of error states:

I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CHANGED ITS ALS APPEAL RULING

{¶ 16} In his first assignment of error, Sheppeard claims that the trial court erred when it made a finding regarding his motion to suppress that contradicted an earlier finding in the court's ruling on his ALS appeal.

{¶ 17} At the ALS appeal hearing, the State offered into evidence the BMV Form 2255 that Officer Chrisman completed on June 22, 2011; the State presented no witnesses. Sheppeard objected to the court's consideration of the BMV form as hearsay and as a violation of his rights under the Confrontation Clause; the court considered the form over Sheppeard's objection.

{¶ 18} Sheppeard testified on his own behalf. Of relevance here, he testified that he drank two 24-ounce beers and took an Ambien upon returning home at approximately 4:45 p.m on May 31, 2011. After he was awakened by the police at approximately 5:25 p.m, the police officer asked him if he was aware that he had hit a car. Sheppeard responded, "Yes." The officer looked at the vehicle and asked Sheppeard how much he had had to drink. Sheppeard responded that he drank a 24-ounce beer. The officer then told Sheppeard that he was being charged with OVI, that he was under arrest, and that he would need to get blood drawn. Sheppeard testified that the officer did not read him BMV Form 2255. Instead, the officer told him that he would go to jail if he refused to give blood. Sheppeard went with the officer to the hospital and had blood drawn.

{¶ 19} The trial court sustained Sheppeard's ALS appeal, finding in part that there

was no evidence that Sheppeard had been read BMV Form 2255 prior to the blood draw. Therefore, any "quick-take" administrative license suspension was invalid.

{¶ 20} The trial court subsequently held a hearing on Sheppeard's motion to suppress evidence, which challenged, among other things, the result of the blood test. At the hearing, Officer Chrisman testified that after arresting Sheppeard on May 31, Sheppeard was placed in the back of the officer's cruiser and a "2255 BMV form was read to him at that point." In its ruling on the motion to suppress, the trial court found that "[t]he BMV form was read to the defendant after he was placed under arrest. After the defendant was transported to the hospital, he consented to the blood draw."

{¶ 21} Sheppeard argues that, having previously found during the ALS appeal that no one had read him the BMV Form 2255, the trial court could not later deny his motion to suppress the blood evidence by finding that "BMV Form 2255 was read to the defendant after he was placed under arrest." Sheppeard asserts that the trial court was barred by res judicata from altering its findings regarding the reading of BMV Form 2255 to Sheppeard on May 31, 2011.

{¶ 22} "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as * * * estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). "Under the doctrine of res judicata, '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Kelm v. Kelm*, 92 Ohio St.3d 223, 227, 749 N.E.2d 299 (2001), quoting *Grava,* supra, at syllabus. Furthermore,

"[r]es judicata operates to bar litigation of 'all claims which were or might have been litigated in a first lawsuit.'" (Emphasis omitted.) *Grava,* 73 Ohio St.3d at 382, quoting *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990).

{¶ 23} Sheppeard's argument was rejected by the Ohio Supreme Court in *State v. Williams*, 76 Ohio St.3d 290, 667 N.E.2d 932 (1996). In that case, the Supreme Court held that a "trial court's determination of an administrative-license-suspension appeal is an order entered in a special proceeding and is final pursuant to R.C. 2505.02." *Id*. at paragraph two of the syllabus (overruling *Columbus v. Adams*, 10 Ohio St.3d 57, 461 N.E.2d 887 (1984)). However, the Supreme Court further held that "[t]he doctrine of issue preclusion does not preclude the relitigation in a criminal proceeding of an issue that was previously determined at an administrative-license-suspension hearing." *Id.* at paragraph one of the syllabus. The court recognized this exception to issue preclusion, reasoning:

First, administrative-license-suspension proceedings under R.C. 4511.191 are civil and administrative in nature. As such, this court has held that these proceedings are independent of any criminal proceeding pursuant to other statutes or ordinances. Moreover, the differences between an ALS appeal and a suppression hearing in the criminal proceeding for drunk driving also weigh against applying issue preclusion in this context. Analysis of the procedures underlying an ALS appeal demonstrates a somewhat limited proceeding designed for the speedy determination of an individual driver's license suspension. The appeal, which is in actuality a post-deprivation hearing afforded to satisfy the requirements of due process, is informal, and

the procedures are substantially less stringent than the procedures used in the criminal proceedings on the drunk-driving charge. For example, an ALS appeal may be instituted within five days of the driver's arrest, and made by oral motion with no specific pleading addressing with particularity the challenged issues. As such, the ALS appeal procedures are inappropriate to the determination of the same issues when presented in a subsequent criminal proceeding on the drunk-driving charge.

Most compelling, however, is the adverse impact on public safety that would result from allowing issue preclusion to prevent the relitigation in the criminal proceedings of issues determined in the administrative-license-suspension appeal. If such preclusive effect were allowed, successful challenges at the ALS appeal to the reasonableness of the stop would frequently, if not always, result in dismissal of the drunk-driving charge. Consequently, the state would likely be forced to treat the ALS appeal as an initial and essential part of the criminal trial on the drunk-driving charge, and thus defeat the General Assembly's intent to provide a swift administrative review of a driver's license suspension.

Accordingly, we hold that the doctrine of issue preclusion does not preclude the relitigation in a criminal proceeding of an issue that was previously determined at an administrative-license-suspension hearing.

(Citations omitted.) *Williams* at 296.

**{¶ 24}** Based on *Williams*, Sheppeard's first assignment of error is overruled.

III.

{¶ 25} Sheppeard's second assignment of error states:

II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING THE MOTION TO SUPPRESS.

{¶ 26} In his second assignment of error, Sheppeard claims that the trial court erred in overruling his motion to suppress.

{¶ 27} Sheppeard raised eight arguments in his motion, namely that: (1) there was no probable cause to stop, detain, and arrest him; (2) the blood test was not taken voluntarily; (3) the blood test was not conducted in accordance with the time limitations and regulations; (4) the machine that analyzed his alcohol level was not working properly or calibrated; (5) the solution used to calibrate the testing instrument was invalid; (6) the operator of the instrument used to test the alcohol level was not properly licensed; (7) Sheppeard's statements were obtained in violation of his Fifth and Sixth Amendment rights; and (8) the field sobriety tests were not performed in accordance with proper standards. The trial court found that certain statements were obtained in violation of Sheppeard's *Miranda* rights, but otherwise overruled the motion to suppress. Sheppeard challenges the trial court's ruling.

{¶ 28} When ruling on a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). In reviewing a trial court's decision on the motion to suppress, an appellate

court must accept the trial court's findings of fact as true, if they are supported by competent, credible evidence. *State v. Dudley*, 2d Dist. Montgomery No. 24904, 2012-Ohio-960, ¶ 6. The appellate court must then determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

{¶ 29} The trial court made the following findings of fact, which we find are supported by competent, credible evidence from the suppression hearing.

{¶ 30} Shortly after 5:00 p.m. on May 31, 2011, Mike Williams saw a blue Chevrolet Cruze strike a parked maroon Toyota Camry in the 2700 block of Share Street and continue down the street. Williams informed Suzanne Kasten, the owner of the Camry, that he had observed the Cruze strike her Camry. Kasten called the police.

{¶ 31} Officer Kelly Chrisman was dispatched to the scene. After speaking with Kasten, Officer Chrisman went to 2740 Share Street, where the blue Cruze was parked in the driveway with visible damage on its passenger side. Officer Chrisman knocked on the door. When Sheppeard answered, the officer observed that Sheppeard was unsteady on his feet and his speech was slurred; the officer did not notice any odor of alcohol at that time. Officer Chrisman told Sheppeard that he was investigating a crash involving his blue Cruze. Sheppeard stated that he had not been driving and asked the officer if he would like for Sheppeard to get the car out of the garage. Officer Chrisman explained to the Sheppeard that the vehicle was not in the garage, but was parked in the driveway.

{¶ 32} As the officer was speaking to Sheppeard, Sheppeard's wife, Jennifer, arrived home. The three walked to the Cruze in the driveway to look at the damage. Sheppeard denied any knowledge of the damage to the Cruze. As they stood in the

driveway, Jennifer told the officer that Sheppeard takes Ambien to help him sleep. She then stated to her husband that he shouldn't be driving when he takes Ambien. Sheppeard replied, "I know." While this conversation was taking place in the driveway, Officer Chrisman noticed a slight odor of alcohol from Sheppeard. Sheppeard told the officer, "I had a 24-ouncer, just between you and me." When the officer asked if he had taken Ambien, Sheppeard replied that he did not know. He later acknowledged that he had taken "a couple" Ambien.

**{¶ 33}** Due to safety reasons attributable to the defendant's being unsteady on his feet, Officer Chrisman did not seek to administer any field sobriety tests. The officer then placed Sheppeard under arrest for OVI and handcuffed him. No *Miranda* warnings were given. After Sheppeard was placed in the police cruiser, BMV Form 2255 was read to him. Sheppeard refused to sign the form. Officer Chrisman then transported Sheppeard to Community Hospital, where he was asked to submit to a blood draw. Sheppeard consented to the blood draw, and Nurse Megan Guerriero drew two vials of blood. Officer Chrisman received the vials from Nurse Guerriero at 6:39 p.m. and placed the vials in a sealed cardboard evidence box, which he then deposited in the refrigerator of the Springfield police department's traffic office at 8:05 p.m.

**{¶ 34}** The vials in the sealed cardboard evidence box were transported to the Miami Valley Regional Crime Laboratory, where they were received on June 1, 2011 and refrigerated. MVRCL Forensic Toxicologist Elizabeth Kiely brought the sealed box to the toxicology section's refrigerator and opened it. Kiely is the holder of a permit for alcohol and drug of abuse testing, as well as being the holder of a laboratory director's permit, both

of those permits having been issued by the Ohio Department of Health. Kiely's work is supervised by Laureen Marinetti, Ph.D., the laboratory director for MVRCL.

{¶ 35} The next day (June 2), Kiely opened the vials and conducted the initial test screen. On June 3, 2011, Kiely calibrated the testing instrument and conducted the confirmation test. The tests were conducted and analyzed under the gas chromatography method, pursuant to Ohio Adm.Code 3701-53-03(A)(1). The result of the analysis of Sheppeard's blood sample by Kiely indicated an alcohol result of 0.236 grams percent (gms/100 ml).

{¶ 36} Sheppeard, his wife, his mother, and the owner of Tunnel Drive Thru in Springfield all testified on Sheppeard's behalf at the suppression hearing. Their testimony supported Sheppeard's contentions that he was not intoxicated while he was driving home, that Officer Chrisman had stated that Sheppeard would go to jail if he refused the blood test, and/or that the officer did not read BMV Form 2255 to Sheppeard. Sheppeard further testified that he smelled alcohol when the nurse wiped his hand prior to drawing his blood.

{¶ 37} Sheppeard first claims that the trial court erred in concluding that he voluntarily consented to the blood draw. "The drawing of blood from a suspect is not a trivial invasion of that person's privacy. Unlike other searches, it involves the actual invasion of the person's body. And, there are many personal characteristics that can potentially be discovered by an analysis of the person's blood. Without consent, a blood draw requires probable cause and either a warrant, or exigent circumstances justifying a search without a warrant." *State v. Rawnsley*, 2d Dist. Montgomery No. 24594, 2011-Ohio-5696, ¶ 15.

**{¶ 38}** Under R.C. 4511.191, a person who obtains an Ohio driver's license and avails himself or herself of the privilege of operating a motor vehicle on the roads of this state impliedly consents to a reasonably reliable chemical test for intoxication. R.C. 4511.191; *Rawnsley* at ¶ 16. This statute has been held not to violate the limitations against unreasonable searches and seizures set forth in either the Ohio or United States constitutions. *Rawnsley* at ¶ 16, citing *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 17-18. "Thus, upon arrest, an improper or incomplete recitation of BMV Form 2255, or otherwise improper or incomplete advice given to a defendant concerning his or her rights under the implied consent statute, is not of constitutional significance, and would not support the application of the exclusionary rule to suppress the evidence obtained." *Id.* The implied-consent statute does not apply, however, unless the person has first been arrested for OVI under R.C. 4511.19(A) or (B). *Rawnsley* at ¶ 17, citing R.C. 4511.191.

**{¶ 39}** Sheppeard argues that there was no evidence that he had been arrested and read BMV Form 2255 prior to his blood draw. However, Officer Chrisman testified that he placed Sheppeard under arrest at Sheppeard's residence, put Sheppeard in the police cruiser, read BMV Form 2255 to Sheppeard, and then transported Sheppeard to Community Hospital, where Sheppeard consented to the blood draw. The trial court credited that testimony. The trial court did not err in finding that the blood test was neither involuntary nor unconstitutionally coerced.

**{¶ 40}** Second, Sheppeard claims that Officer Chrisman lacked probable cause to arrest him. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20

L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*.

{¶ 41} To arrest a suspect requires significantly more than what is needed to detain a person for the purpose of investigating a possible criminal offense, or even to conduct field sobriety tests, which requires "[s]omething more than a reasonable and articulable suspicion for a brief, investigatory stop, but less than full-blown probable cause for an arrest." *State v. Scott*, 2d Dist. Montgomery No. 22446, 2008-Ohio-2725, ¶ 255-256. *See State v. Brown*, 2d Dist. Greene No. 2011 CA 52, 2012-Ohio-3099, ¶ 25. Probable cause, specifically in terms of arrests for driving under the influence, is determined by whether, at the time of arrest, the officer had sufficient information, from a reasonably trustworthy source, of facts and circumstances, that are sufficient to make a prudent person believe the suspect was driving under the influence. *Brown* at ¶ 25. This standard requires examining the totality of facts and circumstances surrounding the arrest. *Id*., citing *State v. North*, 2d Dist. Champaign No. 93CA10, 1993 WL 441805, *3 (Nov. 1, 1993).

{¶ 42} The trial court heard testimony that Williams saw a blue Chevy Cruze hit a Toyota Camry owned by Kasten at approximately 5:15 p.m. and continue down the street without stopping. Officer Chrisman responded to Kasten's residence at 5:34 p.m., where he was directed to Sheppeard. The officer went to Sheppeard's residence. When Sheppeard came to the door, he was "unsteady" and "wobbly" and his speech was "very slurred." He was confused about his vehicle's location. Sheppeard's Cruze had damage along the

passenger side of the vehicle; Sheppeard initially denied knowledge of the damage. When his wife commented that he should not be driving while taking Ambien, Sheppeard stated, "I know," and later acknowledged that he had taken a couple Ambiens that day. Sheppeard also told the officer that he had drunk a "24-ouncer." Although the officer did not specifically ask about the timing of Sheppeard's taking the Ambien and consuming the beer, based on the totality of the circumstances, the officer had probable cause to believe that Sheppeard hit the Toyota Camry with his Chevy Cruze while under the influence of alcohol or drugs. The trial court did not err in concluding that Sheppeard's arrest was based on probable cause.

{¶ 43} Third, Sheppeard argues that his statements to Officer Chrisman at his home were made in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda*, the United States Supreme Court held that the State may not use statements stemming from a defendant's custodial interrogation unless it demonstrates the use of procedural safeguards to secure the defendant's privilege against self-incrimination. *Id.* at 444. Police are not required to give *Miranda* warnings to every person that they question, even if the person being questioned is a suspect. *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). Instead, *Miranda* warnings are only required for custodial interrogations. Id.

{¶ 44} "Custodial interrogation" means questioning initiated by the police after the person has been taken into custody or otherwise deprived of his freedom in any significant way. *State v. Wilson*, 2d Dist. Montgomery No. 22665, 2009-Ohio-1279, ¶ 18, citing *State v. Steers*, 2d Dist. Greene No. 89-CA-38, 1991 WL 82974 (May 14, 1991). In order for a

defendant's statements made during a custodial interrogation to be admissible, the State must establish that the accused knowingly, voluntarily, and intelligently waived his or her rights. *Miranda*, supra; *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976), overruled on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

{¶ 45} Sheppeard asserts that he was taken into custody when he was asked to come outside and look at the damage to his vehicle, but we find nothing in the circumstances prior to Sheppeard's being handcuffed, placed under arrest, and put in the police cruiser that indicate that he was deprived of his freedom in any significant way. Accordingly, the statements that Sheppeard made prior to his formal arrest were not the product of custodial interrogation and were not subject to suppression under *Miranda*.

{¶ 46} Finally, Sheppeard contends that his blood sample was not taken in substantial compliance with Ohio Department of Health regulations. Ohio Adm.Code Chapter 3701-53 sets forth requirements and procedures for the collection, handling, and testing of blood and other bodily substances. Sheppeard argues that the collection of his blood did not substantially comply with those requirements because (1) it was unknown where the blood collection kit had come from, (2) it was unknown if coagulant was used in the collection vials, (3) the officer carried the blood in his car for almost 1½ hours before refrigerating it, (4) MVRCL did not have a written manual, (5) the lab technician who testified was not the designated laboratory director, and (6) the State did not introduce a license for the lab technician.

{¶ 47} Sheppeard did not raise these specific arguments about the collection of his blood in his motion to suppress. He thus waived these objections to the admissibility of the

blood evidence. *See State v. Matthews*, 2d Dist. Montgomery No. 24233, 2011-Ohio-5066, ¶ 38-39. Even if he had raised these arguments in the trial court, Nurse Guerriero testified that Officer Chrisman provided her a cardboard box with "everything that you need" for the blood draw (except the needle), including the tubing, labels, vials, and antiseptic. She stated that the antiseptic did not contain alcohol and she believed the vials contained an anticoagulant, although she did not check for it. Ohio Adm.Code 3701-53-05(F) requires blood specimens to be refrigerated "while not in transit;" although almost 1½ hours elapsed between the blood draw and when Officer Chrisman put Sheppeard's blood in the police department's refrigerator, we cannot say that this delay did not substantially comply with the regulations. *See State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 50, fn.2, superseded in part by statute. MVRCL Toxicologist Kiely testified that the laboratory had a written manual, but it was kept electronically rather than in printed form. She also testified that she conducted the analysis on Sheppeard's blood and that she both had a laboratory director's permit and was supervised by the laboratory director for MVRCL. *See* Ohio Adm.Code 3701-53-07(A). Accordingly, the evidence at the suppression supports a conclusion that the blood specimen was obtained and tested in substantial compliance with the Ohio Department of Health regulations.

{¶ 48} Sheppeard's second assignment of error is overruled.

IV.

{¶ 49} Sheppeard's third and fourth assignments of error state:

III. THE VERDICT OF THE JURY WAS BASED UPON INSUFFICIENT SENTENCE [SIC] AND WAS AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE.

IV. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S RULE 29 MOTION AS THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A VERDICT AND IN REFUSING A NEW TRIAL REQUEST.

**{¶ 50}** In his third and fourth assignments of error, Sheppeard claims that the trial court erred in denying his Crim.R. 29 motion for a judgment of acquittal and that his convictions were based on insufficient evidence and against the manifest weight of the evidence. Sheppeard also asserts that the trial court should have granted his oral motion for a new trial, which was made at his sentencing.

**{¶ 51}** When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a sufficiency of the evidence claim. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing the trial court's denial of a Crim.R. 29(A) motion at the close of the State's case, we consider only the evidence then available to the trial court. *State v. Stoner*, 2d Dist. Clark No. 2008 CA 83, 2009-Ohio-2073, ¶ 24.

**{¶ 52}** When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements

of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 53} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 54} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 55} Upon review of the State's evidence at the conclusion of the State's

case-in-chief, we find sufficient evidence to support Sheppeard's conviction. The State's evidence demonstrated that Officer Chrisman spoke with Sheppeard shortly after the accident, which the jury could have reasonably inferred involved Sheppeard's Chevy Cruze (with Sheppeard driving) and the Toyota Camry. Sheppeard was groggy, unstable, had glassy eyes, and was slow to answer questions. He denied being involved in an accident and believed his car was in the garage, not on the driveway. There was no evidence that Sheppeard had stopped after the accident or made any effort to contact the Camry's owner. Sheppeard acknowledged taking two or three Ambien and drinking a "24-ouncer." Although there was no direct testimony about when Sheppeard took the Ambien and drank the beer, the jury could have reasonably concluded from the totality of the circumstances that Sheppeard was under the influence of alcohol and/or medication when the accident occurred. The trial court did not err in denying Sheppeard's Crim.R. 29 motion, and the conviction was not based on insufficient evidence.

{¶ 56} Sheppeard further claims that his conviction was against the manifest weight of the evidence and that the trial court erred in denying his motion for a new trial. At sentencing, Sheppeard orally moved for a new trial, in part on the ground that the jury lost its way when it convicted him of OVI but acquitted him of operating a vehicle with a concentration of 0.17 percent or more by weight per unit volume of alcohol in his whole blood.

{¶ 57} Several witnesses testified on Sheppeard's behalf at trial. His mother, Randi Sheppeard, testified that Sheppeard visited her at her home from approximately 3:00 p.m. to 4:30 p.m. on May 31, 2011. Sheppeard had not been drinking, and he did not say

anything about taking Ambien. Shortly after 5:00 p.m., Sheppeard called Randi's house and asked to speak with his wife, Jennifer, who was there picking up her children. (Sheppeard's mother babysits for Jennifer while she works.) Randi testified that Sheppeard still "sounded fine." Randi learned from Jennifer that Sheppeard had a "fender-bender." At 5:30 p.m., Randi went to Sheppeard's house after learning from Jennifer that the police were there. When Randi arrived, Sheppeard was lethargic and "could hardly stand up." Randi heard Sheppeard say that he had taken two Ambien and drunk two 24-ouncers. Sheppeard was arrested and placed in a police cruiser. Randi stated that when she went to talk to him through the cruiser's window, "he was darn near comatose."

{¶ 58} Sherry Bostick, owner of Tunnel Drive Thru, testified that Sheppeard purchased one 24-ounce Budweiser between 4:35 p.m. and 4:40 p.m. on May 31, 2011. The two had a conversation, and Sheppeard was "fine." Bostick did not see any signs that Sheppeard was intoxicated.

{¶ 59} Jennifer Sheppeard testified that she received a telephone call from Sheppeard at Randi's house. Jennifer stated that Sheppeard sounded fine, and he told her that he had grazed a neighbor's car. Sheppeard told her that he had tried to go down to the neighbor's house, but the neighbor was not there. Sheppeard was going to take his sleep medicine and lie down. It was not unusual for Sheppeard to have some alcohol along with the Ambien to help him sleep. Jennifer stated that she notices Ambien's effect on Sheppeard about ten or fifteen minutes after he takes it.

{¶ 60} When Jennifer arrived home, Officer Chrisman was there. She testified that when Sheppeard answered the door, he looked very groggy, "like he'd just woke up."

Jennifer stated that his coordination and perception "were not very good." Jennifer stated that Sheppeard would not have been able to drive if he had taken Ambien two hours before then.

{¶ 61} Sheppeard testified that he works as a delivery truck driver at night, and he sleeps in the afternoon. He takes Ambien to help him sleep. On May 31, 2011, he got off work about noon, had lunch with his wife between 1:00 p.m. and 2:00 p.m. at home, took an antidepressant (Wellbutrin), and went to his mother's house from approximately 3:00 p.m. to 4:30 p.m. On the way home, Sheppeard stopped at Tunnel Drive Thru, bought a 24-ounce beer, and spoke with Bostick for several minutes. Sheppeard then went through the Arby's drive through and came home.

{¶ 62} Sheppeard testified that he was "messing with" his satellite radio in his car and scraped the parked car of his neighbor, Paul. He pulled into his own driveway, which was only two houses away, and walked back to Paul's house. Sheppeard saw that Paul's truck was not there and assumed he was not home. Sheppeard walked back home, called his wife, and then drank two 24-ounce cans of beer and took an Ambien. Sheppeard stated that he was asleep when Officer Chrisman knocked on his door. Sheppeard indicated that he "was out of it" when he talked with the officer and that he vaguely remembered saying much of what he reportedly said. Sheppeard denied drinking or taking Ambien prior to the accident.

{¶ 63} Upon review of the record, we cannot conclude that the jury lost its way in finding Sheppeard guilty of OVI and failure to stop after an accident or that the court's guilty verdict on the failure to control charge was against the manifest weight of the evidence. The

jury heard the testimony of the responding police officer, a witness to the accident, the toxicologist, Sheppeard, the owner of Tunnel Drive Thru, and Sheppeard's wife and mother. There was conflicting evidence as to whether Sheppeard was under the influence of alcohol and/or a drug of abuse (Ambien) when he hit the Toyota Camry. It was the province of the jury to assess the witnesses' credibility and determine whether the State had proven its case beyond a reasonable doubt. Given the evidence presented, we cannot conclude that the verdicts were against the manifest weight of the evidence.

{¶ 64} We also cannot conclude that the jury lost its way in finding Sheppeard guilty of OVI, but not guilty of the prohibited concentration offense. The jury was presented with evidence of Sheppeard's consumption of both alcohol and Ambien. We agree with the trial court that there is no "logical inconsistency" between the two verdicts.

{¶ 65} Finally, Sheppeard states as part of his fourth assignment of error argument that the trial court should have granted him a new trial due to cumulative error. The errors he identifies are the trial court's "overturning" the ALS decision, the failure to suppress the blood evidence, the prosecutor's argument at trial that Sheppeard's witnesses changed their stories, and that the State failed to prove its case beyond a reasonable doubt. The prosecutor did not commit misconduct by commenting on the discrepancies between Sheppeard's witnesses' testimony at the suppression hearing and at trial. We have addressed and rejected Sheppeard's other arguments. Accordingly, the trial court did not err in denying Sheppeard's request for a new trial due to cumulative error.

{¶ 66} Sheppeard's third and fourth assignments of error are overruled.

V.

**{¶ 67}** Sheppeard's fifth assignment of error states:

V. THE SENTENCE IMPOSED UPON APPELLANT BY THE TRIAL COURT WAS EXCESSIVE FOR THE OFFENSE AND CONSTITUTES A PUNISHMENT FOR EXERCISING HIS RIGHT TO A JURY TRIAL.

**{¶ 68}** Sheppeard's fifth assignment of error asserts that his sentences for OVI and leaving the scene of an accident were excessive and constituted a punishment for exercising his right to trial.

**{¶ 69}** When sentencing for a misdemeanor offense, the trial court is guided by the "overriding purposes of misdemeanor sentencing," which are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.21(A); *State v. Collins*, 2d Dist. Greene No. 2012-CA-2, 2012-Ohio-4969, ¶ 9. "To achieve those purposes, the sentencing court [must] consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." R.C. 2929.21(A). The sentence imposed must be "reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B); *Collins* at ¶ 9.

**{¶ 70}** "A trial court is also required to consider the nature and circumstances of the offense, whether there was a history of persistent criminal activity or character that reveals a substantial risk of the offender committing another offense, and numerous other factors

related to the offender and the offense. R.C. 2929.22(B). However, in misdemeanor sentencing, there is no requirement that a trial court specifically state its reasons for imposing the sentence that it does on the record. *State v. Jackson*, 2d Dist. Montgomery No. 20819, 2005-Ohio-4521, ¶ 16, citing *State v. Harpster*, 5th Dist. Ashland No. 04COA061, 2005-Ohio-1046." *Collins* at ¶ 10.

**{¶ 71}** The punishment for a violation of R.C. 4511.19(A)(1)(a) is set forth in R.C. 4511.19(G). That statute provides, in relevant part:

(1) Whoever violates any provision of divisions (A)(1)(a) to (i) or (A)(2) of this section is guilty of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them. * * * The court shall sentence the offender for [the] offense under Chapter 2929. of the Revised Code, except as otherwise authorized or required by divisions (G)(1)(a) to (e) of this section:

(a) Except as otherwise provided in division (G)(1)(b), (c), (d), or (e) of this section, the offender is guilty of a misdemeanor of the first degree, and the court shall sentence the offender to all of the following:

(i) If the sentence is being imposed for a violation of division (A)(1)(a), (b), (c), (d), (e), or (j) of this section, a mandatory jail term of three consecutive days. * * * The court may sentence an offender to both an intervention program and a jail term. The court may impose a jail term in addition to the three-day mandatory jail term or intervention program. However, in no case shall the cumulative jail term imposed for the offense

exceed six months.

The court may suspend the execution of the three-day jail term under this division if the court, in lieu of that suspended term, places the offender under a community control sanction * * * and requires the offender to attend, for three consecutive days, a drivers' intervention program * * *[;]

* * *

(iii) In all cases, a fine of not less than three hundred seventy-five and not more than one thousand seventy-five dollars;

(iv) In all cases, a class five license suspension of the offender's driver's or commercial driver's license or permit or nonresident operating privilege from the range specified in division (A)(5) of section 4510.02 of the Revised Code. [That range is six months to three years.] The court may grant limited driving privileges relative to the suspension under sections 4510.021 and 4510.13 of the Revised Code.

{¶ 72} Sheppeard's sentence for the OVI consisted of 15 days in jail, a $500 fine, and a one-year driver's license suspension (minus his 20-day ALS suspension). That sentence was within the range established by R.C. 4511.19(G)(1)(a). While this sentence was more than the minimum sentence, we cannot say that the trial court abused its discretion when it imposed its OVI sentence.

{¶ 73} Springfield City Ordinance 501.99 sets forth the penalties for misdemeanors. For first-degree misdemeanors, it authorizes a trial court to impose up to a $1,000 fine, restitution, and up to 180 days in jail. Springfield City Ordinance 335.12(b) (stopping after

an accident) also requires the trial court to impose a class five driver's license suspension, and states that "[n]o judge shall suspend the first six months of suspension of an offender's license, permit, or privilege required by this subsection."   Sheppeard's sentence of five days in jail, a $500 fine, and a six-month driver's license suspension for failing to stop after the accident was authorized by law, and we do not find that it was an abuse of discretion.

**{¶ 74}**   Sheppeard's fifth assignment of error is overruled.

VI.

**{¶ 75}**   The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Michael F. Sheils
Wilfred L. Potter
Hon. Thomas E. Trempe