[Cite as *State v. Dumas*, 2025-Ohio-4602.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30406 |
| Appellee | : | |
| | : | Trial Court Case No. 23CRB01433 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| JULIA A. DUMAS | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 3, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

RONALD C. LEWIS, JUDGE

EPLEY, P.J., and TUCKER, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30406

ADAM J. ARNOLD, Attorney for Appellant
JOHN D. EVERETT, Attorney for Appellee

LEWIS, J.

{¶ 1} Defendant-Appellant Julia A. Dumas appeals a judgment of the Kettering Municipal Court finding her guilty of carrying a concealed weapon following a bench trial. For the following reasons, we affirm the judgment of the trial court.

## I.    Procedural History

{¶ 2} On October 26, 2023, following a traffic stop, Dumas was given a citation for one count of carrying a concealed weapon ("CCW"), in violation of R.C. 2923.12(B)(1), a misdemeanor of the second degree; and one count of excessive window tint, in violation of R.C. 4513.241, a minor misdemeanor.   On December 7, 2023, Dumas entered a negotiated guilty plea to an amended charge of disorderly conduct, and the remaining charges were dismissed.   The trial court imposed a sentence of 30 days in jail, all of which were suspended; a fine of $250, of which $200 was suspended; and court costs.   Dumas was placed on one year of unsupervised community control, and the trial court ordered that her firearm be returned to her.

{¶ 3} Dumas appealed, arguing that her guilty plea was not made knowingly and voluntarily.   We agreed and reversed her conviction.   *State v. Dumas*, 2024-Ohio-2731 (2d Dist.).

{¶ 4} Upon remand, the case proceeded to a bench trial, at which the following evidence was presented.   Kettering Police Officer Jonathan McCoy testified that just after 11 p.m. on October 26, 2023, he was wearing the uniform of the day and driving a marked

police cruiser on Wilmington Pike near Wheatland Avenue in the City of Kettering. He saw a black 2005 Pontiac sedan with heavily tinted windows and was unable to see any occupants inside the vehicle. When Officer McCoy ran the vehicle's license plate, the registration did not return to that vehicle but rather to a white Chevrolet. Officer McCoy conducted a traffic stop of the vehicle, which was driven by Dumas. A male was seated in the front passenger seat.

{¶ 5} Dumas explained that she had recently purchased the vehicle and was waiting on the title. While speaking to the occupants, Officer McCoy detected the odor of marijuana coming from the vehicle. Officer McCoy asked both occupants if there were any drugs or weapons in the car. Neither occupant responded initially, so Officer McCoy asked again. He specifically questioned the occupants separately if there were any guns in the car and then whether there were any drugs in the car. The occupants both responded no. The male passenger admitted he had already smoked the marijuana. Officer McCoy asked again if there were any weapons or drugs in the vehicle, and the occupants again responded no.

{¶ 6} After checking the driver's license information for both occupants, Officer McCoy approached the driver's side and asked Dumas to step out of the vehicle. He again asked if she had any weapons or drugs in the vehicle. Dumas responded that there was a handgun in her purse inside the car. When asked why she had not advised Officer McCoy of the gun earlier, Dumas stated that she forgot it was there. Dumas admitted that the gun belonged to her and that she had purchased it at a pawn shop.

{¶ 7} Officer McCoy discovered Dumas's loaded handgun in her purse, which was located on the front passenger side floorboard. He removed the round in the chamber and removed the magazine prior to collecting it. Officer McCoy also located a Picatinny rail

mount in the center console of the vehicle, which was a laser light that could be mounted beneath the gun, and a gun holster in the glove compartment. The gun was later test fired by Kettering Police Detective Amy Pedro, who testified it was operable. The gun was admitted into evidence at trial.

{¶ 8} Officer McCoy testified that when he measured the window tint, he verified that it was not within the legal limits. He also ran a criminal history check on Dumas and confirmed that she did not possess a valid CCW permit but was a qualified individual allowed to own a firearm.

{¶ 9} Officer McCoy issued a traffic citation for the window tint violation as well as a summons for the CCW violation. A copy of his body camera footage was admitted into evidence at trial along with the body camera footage of Kettering Police Officer Nicolls, who assisted Officer McCoy on the traffic stop. Following the admission of the State's exhibits, defense counsel moved for a Crim.R. 29 acquittal, which was denied.

{¶ 10} Dumas testified on her own behalf. She stated that on October 26, 2023, she was driving her car while working on orders for Instacart, a grocery delivery service. She accepted a batch order earlier in the night that included three orders at 7:55 p.m. and two more at 10 p.m. She had completed the first three orders but was working on the two additional orders when she was stopped by Officer McCoy. Because of that, she was on her cell phone during the traffic stop contacting both the Instacart company and her Instacart clients to let them know she had been stopped. Dumas submitted screenshots of her Instacart app at trial.

{¶ 11} Dumas admitted that when Officer McCoy initially asked her if she had a gun or any weapons in the car, she responded no. This is because when she went to the store for the Instacart purchases, Dumas only took her wallet inside, not her purse. Thus, when

she was pulled over, she forgot she had her purse in the car that contained her gun. She realized that her purse with the gun in it was in her vehicle when Officer McCoy was in his cruiser running their information. According to Dumas, "as soon as [Officer McCoy] got back up [to the car] and I was able to interject," she informed him she had a gun.

{¶ 12} During the conversation outside of the car, Dumas explained to Officer McCoy that the gun was hers, she had purchased it at a pawn shop, and she had been in a head-on collision, which affected her memory. According to Dumas, she had been in a motor vehicle accident on January 2, 2023, and suffered a traumatic brain injury. After the accident, she had post concussive syndrome, muscle spasms, and nerve issues. She was also receiving therapy and speech therapy.

{¶ 13} At the conclusion of trial, Dumas was found guilty as charged and the trial court immediately proceeded to sentencing. For the CCW violation, the trial court imposed 30 days in jail, all of which were suspended; a fine of $250, of which $125 was suspended; and court costs. Dumas was placed on one year of unsupervised probation and ordered to forfeit her gun. For the window tint violation, the trial court imposed a fine of $25 and court costs. Dumas filed a timely notice of appeal solely related to her CCW conviction.

## II.    Sufficiency of the Evidence

{¶ 14} In her first assignment of error, Dumas argues that the trial court erred in overruling her Crim.R. 29 motion for an acquittal and that her conviction for CCW is not supported by sufficient evidence. We disagree.

{¶ 15} A trial court's ruling on a Crim.R. 29(A) motion for acquittal is governed by the same standard that applies to a review of whether a verdict is supported by sufficient evidence. *State v. Tenace*, 2006-Ohio-2417, ¶ 37. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of

the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). A Crim.R. 29 motion compels a trial court to "construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions about whether the evidence proves each element of the offense charged beyond a reasonable doubt." *State v. Turic*, 2006-Ohio-6664, ¶ 13 (2d Dist.). "If a rational trier of fact could find the essential elements of the crime to be proven beyond a reasonable doubt, a defendant is not entitled to acquittal under Crim.R. 29." *Id.*, citing *State v. Carter*, 2006-Ohio-2823, ¶ 41 (2d Dist.).

{¶ 16} "Because a Crim.R. 29 motion presents an issue of law, our review of the trial court's denial of the motion is de novo." *State v. Sowry*, 2004-Ohio-399, ¶ 8 (2d Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991). Where a defendant challenges the denial of a Crim.R. 29(A) motion made at the conclusion of the State's case-in-chief, our review is limited to the evidence then available to the trial court. *State v. Bailey*, 2017-Ohio-2679, ¶ 17 (2d Dist.), citing *State v. Sheppeard*, 2013-Ohio-812, ¶ 51 (2d Dist.).

{¶ 17} The first part of Dumas's first assignment of error considers the sufficiency of the evidence available to the court at the time the Crim.R. 29 motion was made, whereas her second argument considers the sufficiency of the evidence at the conclusion of the trial. Nevertheless, both Dumas's arguments are dependent on the testimony of Officer McCoy rather than any evidence presented after the Crim.R. 29 motion was denied. Thus, we will consider Dumas's arguments together as they are both premised on the sufficiency of the evidence presented during the State's case-in-chief.

{¶ 18} Dumas was convicted of carrying a concealed weapon in violation of R.C. 2923.12(B)(1), which provides:

(B) No person who has been issued a concealed handgun license shall do any of the following:

(1) If the person is stopped for a law enforcement purpose and is carrying a concealed handgun, before or at the time a law enforcement officer asks if the person is carrying a concealed handgun, knowingly fail to disclose that the person then is carrying a concealed handgun, provided that it is not a violation of this division if the person fails to disclose that fact to an officer during the stop and the person already has notified another officer of that fact during the same stop.

{¶ 19} There is no dispute that Dumas was lawfully stopped for a traffic violation and that when asked if she had a gun in the vehicle, she initially denied it, even though she had possession of a gun in her purse. The sole issue before us is whether there was sufficient evidence to convict Dumas because she had not been issued a concealed handgun license. Dumas argues there was insufficient evidence based on Officer McCoy's testimony that Dumas did not have a CCW license. The State, on the other hand, contends that there was sufficient evidence to convict Dumas of a violation of R.C. 2923.12 based on the plain language in R.C. 2923.111 and Officer McCoy's testimony that Dumas was a qualified adult.

{¶ 20} Effective June 13, 2022, R.C. 2923.111 provides that a "qualifying adult" is not required to obtain a license to carry a concealed handgun so long as it is not a "restricted firearm," meaning that the firearm is not a dangerous ordnance or a firearm that a person is prohibited by law from possessing, having, or carrying. R.C. 2923.111(A)(1) and (B)(1). A "qualifying adult" is defined as a person who is 21 years of age or older, who is not prohibited from possessing a firearm under certain federal or state laws, and satisfies all necessary criteria listed in divisions (D)(1)(a) to (j), (m), (p), (q), and (s) of R.C. 2923.125. R.C.

2923.111(A)(2)(a)-(c). Qualifying adults are treated as though they possess a concealed handgun license and may carry a concealed handgun "anywhere in this state in which a person who has been issued a concealed handgun license may carry a concealed handgun." R.C. 2923.111(B)(2) and (3). "The statute provides that a 'qualifying adult' is entitled to the same rights–and is subject to the same restrictions–as a person with a concealed handgun license." *State v. Jones*, 2023-Ohio-4829, ¶ 9 (9th Dist.), citing R.C. 2923.111(B)(3). Thus, under R.C. 2923.12, a qualifying adult who "is carrying or has, concealed on the person's person or ready at hand, a handgun that is not a restricted firearm shall be deemed to have been issued a valid concealed handgun license." R.C. 2923.111(C)(1).

{¶ 21} Relevant here, for purposes of any provision of R.C. 2923.12:

(c) If the provision in specified circumstances requires a concealed handgun licensee to engage in specified conduct, or prohibits a concealed handgun licensee from engaging in specified conduct, the provision shall be construed as applying in the same circumstances to a person who is a qualifying adult in the same manner as if the person was a concealed handgun licensee.

(d) If the application of the provision to a person depends on whether the person is or is not a concealed handgun licensee, the provision shall be applied to a person who is a qualifying adult in the same manner as if the person was a concealed handgun licensee.

R.C. 2923.111(C)(1)(c) and (d).

{¶ 22} Officer McCoy testified that he conducted a traffic stop of Dumas for improper window tint, a valid traffic infraction. Although he asked Dumas on multiple occasions if she had any weapons, including guns, Dumas failed to inform him that she was in possession of a loaded firearm. The firearm was concealed in Dumas's purse. After finally advising

Officer McCoy that there was a gun in her purse, he retrieved a loaded, operable firearm from Dumas's vehicle. Although Officer McCoy testified that Dumas did not have a valid CCW permit, he stated that she was a qualified adult not otherwise prohibited from possessing a firearm. Based on R.C. 2923.111, Dumas was subject to the same requirements as a CCW holder and, therefore, R.C. 2923.12 applied to her.

{¶ 23} The evidence, taken in the light most favorable to the State, was such that a reasonable juror could have found beyond a reasonable doubt that Dumas violated R.C. 2923.12(B)(1). Therefore, Dumas's first assignment of error is overruled.

### III. Ineffective Assistance of Counsel

{¶ 24} In her second assignment of error, Dumas argues that her trial counsel was ineffective for failing to object to the State's use of a police report to refresh Officer McCoy's recollection and that the trial court erred in allowing the State to introduce the evidence without requiring the State to comply with the proper evidentiary procedures. Dumas claims she was prejudiced because the prosecution was allowed to "influence the factfinder with information not properly admitted into evidence . . . ." We do not agree.

{¶ 25} We review alleged instances of ineffective assistance of trial counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Conway*, 2006-Ohio-2815, ¶ 95. "To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different." *State v. Mitchell,* 2008-Ohio-493, ¶ 31 (2d Dist.), citing *Strickland* at 688. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of

ineffective assistance of counsel." *Id.*, citing *State v. Cook*, 65 Ohio St.3d 516, 524-525 (1992).

{¶ 26} A trial court's decision admitting or excluding evidence is reviewed on appeal for an abuse of discretion. *State v. Finnerty*, 45 Ohio St.3d 104, 107 (1989). However, where a defendant fails to object to the admission or exclusion of evidence, appellate review is limited to plain error. *State v. Lang*, 2011-Ohio-4215, ¶ 138. For plain error to exist, the defendant "must demonstrate that an error occurred, that the error was obvious, and that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial." *State v. Echols*, 2024-Ohio-5088, ¶ 50, citing *State v. Knuff*, 2024-Ohio-902, ¶ 117. "Notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Lang* at ¶ 108, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 27} In order to decide the issue of ineffectiveness of Dumas's counsel or whether the trial court committed plain error, we must first review the evidence that Dumas claims was improperly introduced. During Officer McCoy's direct examination, the prosecutor asked about a conversation Officer McCoy had with Dumas after he had searched her car during the traffic stop. The following discussion occurred:

[Prosecutor]: And then off camera you spoke to the Defendant again?

[McCoy]: I would have to read my report.

[Prosecutor]: May I approach the witness, Your Honor?

Court: You may.

Prosecutor]: I'm going to hand you what's going to be marked State's exhibit C as in Charlie in just a minute. Is that a copy of your police report?

[Defense counsel]:   You're marking it as an exhibit?

[McCoy]:   I was just asking her to . . .

[Prosecutor]:   Don't you think I have to?   I'm refreshing recollection.

[Defense counsel]:   I don't think we put it as an exhibit, though.   I think you're just refreshing, for what it's worth.   I don't think it becomes an exhibit because it's his report.

[Prosecutor]:   No, but it's a part of the record.

[Defense counsel]:   I think it's whether or not his recollection gets refreshed.

[Prosecutor]:   We'll go ahead and mark it just in case.

Court:   Yes.

[Prosecutor]:   I'm sorry, officer.   Did this help you remember the statement afterwards?

[McCoy]:   It was just that, yes, I asked her if the gun belonged to her and then she said that she purchased it at a pawn shop.

**{¶ 28}** No further questions were asked regarding the officer's refreshed memory or what was in his report.   State's Exhibit C was not admitted into evidence.

**{¶ 29}** "Evid.R. 612 permits a party to use a writing to refresh a witness's recollection." *State v. Powell*, 2012-Ohio-2577, ¶ 57.   Evid.R. 612 states, in relevant part:

If a witness uses a writing to refresh memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing.   The adverse party is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

{¶ 30} "Under the doctrine of present recollection refreshed, 'the witness looks at the memorandum to refresh his memory of the events, but then proceeds to testify upon the basis of his present independent knowledge.'" *State v. Ford*, 2019-Ohio-4539, ¶ 230, quoting *State v. Scott*, 31 Ohio St.2d 1, 5-6 (1972). Before using a writing to refresh the recollection of a witness, "it must be established that the witness lacks a present recollection of the information or events described in the writing." *Dayton v. Combs*, 94 Ohio App.3d 291, 297 (2d Dist. 1993). The propriety of the form of the questions employed to establish the lack of present recollection is within the discretion of the trial court. *Id*.

{¶ 31} In this case, although it may have been preferable for the prosecutor to further lay a foundation to establish Officer McCoy's lack of recollection, we cannot conclude under these circumstances that the trial court committed plain error when it allowed the officer to review his police report absent any objection. Officer McCoy's statement in response to the prosecutor's question, that he would have to read his report, indicated that he did not recall the answer to the prosecutor's question and needed to refresh his recollection based on his written police report. The prosecutor then provided a copy of Officer McCoy's police report and, after indicating that the report refreshed his recollection, Officer McCoy answered the prosecutor's question. The report itself was neither read into evidence nor submitted into evidence as an exhibit.

{¶ 32} Likewise, we cannot conclude that defense counsel's failure to object constituted ineffective assistance of counsel. Even if we assume defense counsel should have objected, Dumas did not suffer any prejudice due to the failure to object. Prior to the above-quoted testimony, Officer McCoy had already testified that Dumas had admitted the gun was hers, identified what type of gun it was, including the caliber, and told him where the gun was located. Trial Tr. 21-22. Further, Dumas's admissions had been recorded on

body camera footage, which had already been played in open court. The only new evidence admitted from refreshing Officer McCoy's recollection was that Dumas had purchased the gun at a pawn shop. However, this information was also provided later by Dumas during her own testimony. *Id*. at 53-54. The fact that Dumas had purchased the gun from a pawn shop had no bearing on the outcome of the trial. Because Dumas has not shown that she was prejudiced by her trial counsel's failure to object, she has not established ineffective assistance of counsel.

{¶ 33} Dumas's second assignment of error is overruled.

### IV.    Conclusion

{¶ 34} Having overruled the assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . . . .

EPLEY, P.J., and TUCKER, J., concur.